(IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VERLA BARNES,

                Plaintiff,

  v.                                                    OPINION and ORDER

STATE OF WISCONSIN DEPARTMENT                18-cv-105-jdp
OF CORRECTIONS,

                Defendant.

---

A jury awarded plaintiff Verla Barnes $600,000 in compensatory damages on her claims that the Wisconsin Department of Corrections failed to provide her a reasonable accommodation for a disability and then fired her when she complained, in violation of the Rehabilitation Act. The case is now before the court on Barnes's request for equitable relief, Dkt. 86, which is determined by the court rather than the jury.

For the reasons explained below, the court will award Barnes $115,220 in back pay, $81,900 in front pay, and $8,523 in prejudgment interest. The court will also direct the Department to expunge Barnes's record.

BACKGROUND

Barnes worked as a probation agent for the Department from 1998 to 2016. In 2015, she injured her foot on the job. After taking some time off, she transitioned back to work, but she says that the Department didn't give her the accommodations she needed.

In 2016, she reported that someone had stumbled into her and used a racial epithet while she was on the job at the Dane County Courthouse. After an investigation, the Department determined that Barnes had fabricated the incident. The Department then fired

Barnes, relying on a policy that authorized termination for lying. Barnes denies that she lied, and she contends that the Department terminated her for complaining about disability discrimination. The jury found both that the Department failed to accommodate Barnes and that her termination was retaliation for complaining.

In 2017, after applying for 28 jobs, Barnes obtained a new position as an assistant to the housing director at Porchlight Inc., a nonprofit organization that provides services for the homeless. She remains employed at Porchlight but has continued applying for other jobs. She is 54 years old.

ANALYSIS

A. Overview of Barnes's requested relief

Barnes seeks back pay (lost wages and benefits since she was terminated) and front pay (loss of future pay and benefits in lieu of reinstatement). *See Consol. Rail Corp. v. Darrone,* 465 U.S. 624, 630 (1984) (court may award back pay as equitable remedy for violation of the Rehabilitation Act); *Downes v. Volkswagen of Am., Inc.,* 41 F.3d 1132, 1141 (7th Cir. 1994) (court has discretion to award front pay as equitable relief when reinstatement is not "appropriate"). Barnes also asks for "[e]xpungement of [her] employment file at DOC of any reference to her termination and expungement of any related violation of work rules expungement of her work file." Dkt. 86, at 4. The department doesn't address the request for expungement, so the court will assume that the request is undisputed and will grant that relief.

Barnes calculated the monetary aspect of her request for equitable relief as follows:

1. Back pay for the time Barnes was unemployed after the Department terminated her (May 10, 2016, through September 9, 2017): $68,600 (70 weeks x $980 per week)

Barnes says that, if she hadn't been fired, she "would have earned annually the equivalent of the average of her three highest-earning years," which she says averages out to "$980.00 per week after all deductions and contributions to benefit or pension plans." Dkt. 86-1, at 1.

2. Back pay for the difference between the amount Barnes would have made with the Department and the amount she actually made with her new employer from the day she started the new job to the day the jury rendered its verdict (September 9, 2017, to October 25, 2019): $46,200 (111 weeks x $420 per week)

Barnes says that she makes $560 per week at Porchlight, $420 less than what she calculates she would have been making at the Department ($980).

3. Lost past benefits: $82,800 or $75,198

Barnes proposes alternative calculations for her lost past benefits. First, she says that she is entitled to the full amount that the Department would have spent on her benefits from the date of her termination until October 25, 2019. She says that amounts to $82,800, or $460 per week for 180 weeks. Second, she acknowledges that she obtained health insurance from Porchlight on June 1, 2019. If the weeks after June 1 are excluded, Barnes's calculation is reduced to $73,140, or $460 per week for 159 weeks. But she says that the Department paid $98 a week for benefits other than health insurance that she doesn't receive from Porchlight. (She doesn't explain what those other benefits were.) Adding that amount results in a total of $75,198 in lost past benefits.

4. Front pay for the difference between the amount Barnes would have made with the Department and the amount she will make with Porchlight from October 26, 2019, until Barnes retires: $236,460 or $105,000

Again, Barnes proposes alternative figures for front pay. Both figures are based on an assumption that Barnes will remain with Porchlight until she retires and would have made $420 more per week with the Department. The larger figure rests on an assumption that Barnes

will work until she is 65; the smaller figure rests on an assumption that Barnes will work until she is 59. Barnes's only explanation for choosing these two ages is that she "planned to work until age 59," but now "will have to work full time six years longer than [she] planned." Dkt. 90, ¶¶ 14, 17.

5. Future lost benefits until Barnes turns 65: $258,980 or $55,174

The larger figure rests on an assumption that Barnes is entitled to the full amount that the Department would have paid for her benefits (563 weeks x $460 per week). The smaller figure rests on an assumption that Barnes is entitled to only the portion of the benefits that isn't health insurance (563 weeks x $98 per week).

If all the larger amounts are accepted, Barnes's proposed total is $693,460. If the smaller amounts are accepted, the proposed total is $350,592.

The court will now turn to the Department's objections to Barnes's requests.

## B. Back pay

### 1. Lost wages

The Department agrees that Barnes is entitled to lost wages for the entire time between her termination and the trial. It doesn't contend that Barnes failed to mitigate her damages. And the Department agrees with some of Barnes's calculations. It accepts $980 per week as an appropriate estimate of Barnes's salary with the Department, and it accepts $68,600 as the appropriate amount of back pay for the time Barnes was unemployed after the Department terminated her (May 10, 2016, through September 9, 2017). It also accepts $560 per week as an appropriate estimate of Barnes's salary at Porchlight from September 9, 2017, to December 31, 2018.

But the Department says that Barnes's Porchlight salary in 2019 was $652.40 per week, not $560 per week. So it proposes that the court award $30,240 in back pay for September 10, 2017, to December 31, 2018 (72 weeks x $420 per week) and $12,776.40 in back pay for January 1, 2019, to October 25, 2019 (39 weeks x 327.60 per week).

In her reply brief, Barnes doesn't dispute the Department's calculation of her 2019 salary with Porchlight. But she says that it is appropriate to use her 2018 salary to calculate back pay for 2019 because it is reasonable to assume that Barnes would have also received pay increases at the Department since 2016.

The court agrees that it is reasonable to assume that the Department would have given Barnes modest pay raises commensurate to the raise that Barnes received from Porchlight. That is consistent with Barnes's salary history at the Department, which shows that she received increases most years. Dkt. 90-3. So the court will award Barnes the full amount that she requests for lost wages, or $115,220.

2. **Lost benefits**

There is no dispute that lost benefits may be awarded as equitable relief. *See E.E.O.C. v. Accurate Mech. Contractors, Inc.*, 863 F. Supp. 828, 837 (E.D. Wis. 1994) ("Backpay awards . . . should include fringe benefits that the claimant would have received absent the employer's discrimination."). The Department objects to any award of past benefits because the figure Barnes proposed is based on what the Department would have paid, not on the expenses Barnes incurred as a result of not having those benefits. Although Barnes says that she is entitled to "[d]isgorgement of the amount WDOC is saving annually by not having to provide a benefits package to Barnes," Dkt. 86, at 2, the Department says that disgorgement isn't part of back pay and isn't available against a stage agency that doesn't make a profit. Dkt. 91, at 6 (citing

5

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 570 (1990) (rejecting argument that disgorgement is a proper measure of back pay because it is a theory of "money wrongfully withheld" and applies in "actions for disgorgement of improper profits" (internal quotations and alterations omitted)). Because Barnes has had health insurance since her termination (first through her husband and then through Porchlight) and she doesn't attempt to quantify any health benefits she lost, the Department says that court should not award damages related to lost health insurance. This problem also applies to the other benefits Barnes received from the Department. She neither identified what those benefits were nor explained what the loss of those benefits has or will cost her.

Neither party cites any authority for the proper measure of lost benefits. But several courts have held that lost benefits must be calculated based on actual replacement costs or expenses that would have been covered under the benefits policy, *not* based on the amount that would have been paid by the employer. *See, e.g.*, *Gunter v. Bemis Co., Inc.*, 906 F.3d 484, 493 (6th Cir. 2018) ("Courts and juries must calculate lost-benefits awards based on actual expenses that an employee incurs in obtaining other insurance or in receiving care that would have been covered, not based on the value of the lost benefits."). *Accord Lubke v. City of Arlington*, 455 F.3d 489, 499 (5th Cir. 2006); *EEOC v. Farmer Bros. Co.*, 31 F.3d 891, 902 (9th Cir. 1994). This approach is consistent with a case in which the Court of Appeals for the Seventh Circuit affirmed a decision to exclude lost health insurance benefits from a damages award because the plaintiff hadn't identified any expenses he had incurred as a result of the loss of benefits. *Syvock v. Milwaukee Boiler Mfg. Co.*, 665 F.2d 149, 161 (7th Cir. 1981), *overruled on other grounds by Coston v. Plitt Theatres, Inc.*, 860 F.2d 834 (7th Cir. 1988). Barnes cites no authority for the view that a disgorgement theory applies to a request for front pay. So the

court will adopt the approach in *Gunter* and other cases cited above: to obtain an award for lost benefits, Barnes must adduce evidence of her actual costs.

In her reply brief, Barnes states that the insurance she had after her termination cost more than her insurance through the Department. Dkt. 96. But she cites no evidence to support that statement and she doesn't attempt to quantify the additional health-care costs she has incurred. Instead, she asks the court to take judicial notice of the relative costs of family plans under the Affordable Care Act compared to employee group insurance plans for state employees. Dkt. 96, at 6. She cites no authority for the view that judicial notice is appropriate in that context. But even if the court were to assume that Barnes's health insurance after her termination was more expensive, that would not assist the court in quantifying Barnes's damages. Although the court has "broad equitable discretion to fashion back pay awards," *David v. Caterpillar, Inc.*, 324 F.3d 851, 865 (7th Cir. 2003), neither courts nor juries may rely on speculation when awarding damages. *See Sure-Tan, Inc. v. N.L.R.B.,* 467 U.S. 883, 900(1984) ("[I]t remains a cardinal, albeit frequently unarticulated assumption, that a backpay remedy must be sufficiently tailored to expunge only the actual, and not merely speculative, consequences of the unfair labor practices."). Without some evidence from Barnes about the amount of expenses she has incurred, the court cannot award her that relief.

Alternatively, Barnes "offer[s] to prove through [her] testimony the significant hardship caused by Barnes's loss of insurance benefits." Dkt. 96, at 6. It is not clear what Barnes means by this. If she wishes to offer testimony about the emotional distress caused by inferior insurance coverage, that is outside the scope of a request for equitable relief. In any event, Barnes had a fair opportunity to submit evidence about lost benefits. Even after the Department objected to her disgorgement theory, Barnes declined to submit supplemental

7

evidence with her reply. Because Barnes has failed to meet her burden to prove the amount of her lost benefits, the court declines to award her that relief.

3. **Prejudgment interest**

The decision to award interest is a matter of the district court's discretion, but it is presumptively available for violations of federal law. *Pickett v. Sheridan Health Care Ctr.*, 813 F.3d 640, 646 (7th Cir. 2016). The Department doesn't object to an award of prejudgment interest as a general matter, but it says the court shouldn't award it in this case because Barnes didn't argue for a particular rate or calculate the amount to which she believes she is entitled. But Barnes did include information about the prime rate during the relevant time period, *see* Dkt. 89, and the Department doesn't challenge the accuracy of that information. Because neither side objects to applying the prime rate or identifies any other rate that should apply, the court will apply the prime rate. *See Frey v. Coleman,* 903 F.3d 671, 682 (7th Cir. 2018) ("[W]e have instructed district courts to use the prime rate as the benchmark for prejudgment interest unless either there is a statutorily defined rate or the district court engages in refined rate-setting directed at determining a more accurate market rate for interest." (internal quotations omitted)).

Barnes says that the average prime rate from May 2016 (when she was terminated) until September 2017 (when she started her job at Porchlight) was 3.89 percent. And the average prime rate from September 2017 until October 2019 (when the jury rendered its verdict) was 5.0 percent. Again, the Department doesn't object to those numbers. So the court concludes that Barnes is entitled to a total of $8,523 in prejudgment interest, which breaks down as follows: (1) $3,603 ($68,600 x .0389 x 1.35 years) for the 70 weeks between

8

termination and starting the new job; and (2) $4,920 ($46,200 x .05 x 2.13 years) for the 111 weeks between starting the new job and the jury verdict.

## C. Front pay

### 1. Future wages

The Department agrees with Barnes that reinstatement isn't an appropriate remedy in this case. And it doesn't challenge Barnes's assumption that the appropriate baseline for measuring front pay would be the difference between what Barnes would have made at the Department and what she will make at Porchlight. *See Williams v. Pharmacia, Inc.,* 137 F.3d 944, 954 (7th Cir. 1998) ("[F]ront pay compensates the plaintiff for the lost earnings from her old job for as long as she may have been expected to hold it.").

But the Department objects to an award of front pay for two reasons: (1) Barnes didn't provide the court with a discount rate for determining present value; and (2) an award of front pay is unnecessary in light of the substantial amount of back pay that Barnes will receive. Alternatively, the Department objects to the *amount* of Barnes's request for front pay. It says that any award of front pay should be limited to the difference between Barnes's salary at the Department ($980 per week) and her current salary at Porchlight ($652.40) until she reaches the age of 59 (250 weeks), for a total of $81,900. The Department says that Barnes isn't entitled to front pay through the age of 65 because she acknowledges that she planned on retiring at age 59 and she doesn't explain why she needs to work another six years now.

#### a. Failure to propose a discount rate

The court isn't persuaded by the Department's contention that a plaintiff can't obtain an award of front pay without deducting a discount rate, which is an estimate of the interest the plaintiff will likely obtain on the award. *See Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S.

9

523, 537 (1983) (discount rate is generally "based on the rate of interest that would be earned on the best and safest investments"). It is true that a discount rate is a common way to determine present value. *See Williams*, 137 F.3d at 954. But the Department doesn't cite authority for the view that determining the present value of future earnings necessarily requires the plaintiff to propose a discount rate.

Barnes proposes a simple and straightforward approach called the "total-offset method," "under which future inflation is presumed equal to future interest rates." *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 330 (1988). Barnes observes that her front pay calculation holds her future salary in place at the 2016 amount without accounting for any increases in her wages, so it is appropriate to use the total-offset method in this case.

The Supreme Court has recognized total-offset as one valid method of calculating present value. *See Pfeifer*, 462 U.S. at 541–44. *See also Morgan,* 486 U.S. at 354 (O'Connor, J, dissenting) (a district court's application of the total-offset method "would not constitute reversible error if employed by a judge in a bench trial, even if the parties had not introduced evidence to support it"). The parties don't cite any Seventh Circuit cases considering the total-offset method, but there is at least one case in which the court of appeals affirmed a front pay award without applying a discount rate. *See Gusman v. Unisys Corp.*, 986 F.2d 1146, 1147–48 (7th Cir. 1993). And numerous other courts have applied the total-offset method for calculating front pay.[1] The court has uncovered no cases stating that it is not an appropriate method for determining present value.

---

[1] *See, e.g.*, *Stratton v. Dep't for the Aging for City of New York*, 132 F.3d 869, 882 (2d Cir. 1997); *Jackson v. City of Cookeville*, 31 F.3d 1354, 1361 (6th Cir.1994); *Wootten v. Commonwealth of Virginia*, No. 6:14-CV-00013, 2016 WL 7496145, at *4 (W.D. Va. Dec. 30, 2016); *Warren v. Cty. Comm'n of Lawrence Cty., Ala.*, 826 F. Supp. 2d 1299, 1318 (N.D. Ala. 2011); *Jackson v. Bauxite Sch. Dist.*, No. 4:08-CV-3610-WRW, 2010 WL 3119351, at *2 (E.D. Ark. Aug. 5,

The case for applying the total-offset method is strongest when the duration of the front pay award is relatively short. *See Jackson*, 2010 WL 3119351, at *2; *Ogden*, 29 F. Supp. 2d at 1021–22. Because Barnes is seeking a front pay award to encompass a period of at least five years, this counsels against applying the total-offset approach. So if the Department had presented an alternative approach, the court would have considered it. But the Department failed to do that. And the Supreme Court has recognized that "the calculation of an award for lost earnings must be a rough approximation." *Pfeifer*, 462 U.S. at 546. *See also Morgan*, 486 U.S. at 341 (the calculation of front pay "should not be converted into a graduate seminar on economic forecasting").

In the absence of a more precise measurement of present value, the court will apply the total-offset method. But in making the front-pay calculation, the court will use Barnes's current salary at Porchlight rather than her 2018 salary as she proposes. Because Barnes hasn't applied any discount to her requested award, it makes sense to use the most recent data for the purpose of approximating future income.

### b. Need for front pay in light of back pay award

The Department cites three cases for the proposition that the court may deny a request for front pay when the plaintiff will receive a substantial amount of back pay. *See Thurman v. Yellow Freight Sys., Inc.*, 97 F.3d 833, 835 (6th Cir. 1996); *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993); *Best v. Shell Oil Co.*, 4 F. Supp. 2d 770, 776 (N.D. Ill. 1998). But none of these cases are on point.

---

2010); *Tobin v. Liberty Mut. Ins. Co.*, No. CIV.A. 01-11979 DPW, 2007 WL 967860, at *10 (D. Mass. Mar. 29, 2007); *Ogden v. Wax Works, Inc.*, 29 F. Supp. 2d 1003, 1021 (N.D. Iowa 1998).

In *Thurman* and *Saulpaugh*, the courts affirmed decisions denying front pay because the district court found that an award of back pay would make the plaintiff whole. In this case, the Department doesn't challenge Barnes's contention that she is unlikely to find a more lucrative job before retirement, so she will continue suffering losses into the future. And the Department doesn't contend that Barnes should be doing more to find a higher-paying job.

In *Best*, the court *granted* a request for front pay. Although it limited the duration to nine months, this was because the court found that the plaintiff would be able to find a comparable job and likely would not have remained employed with the defendant indefinitely. Neither of those factors are present in this case. Again, the Department doesn't challenge Barnes's contention that she will not be able to find a comparable job. And it doesn't challenge her contention that she likely would have remained with the Department until retirement if she hadn't been fired. The court in *Best* did observe that the plaintiff was receiving several years of back pay, but it didn't state that a substantial award of back pay precluded an award of front pay.

The important question is: what's necessary to make Barnes whole? Because it's undisputed that Barnes will not be made whole without an award of front pay, the court concludes that an award is appropriate.

c. **Amount of future wages**

The remaining dispute regarding future wages is whether Barnes should receive them until she turns 59 or 65. Barnes acknowledges in her declaration that her plan was to retire at 59. Dkt. 90, ¶ 14. Her only justification for seeking front pay until the age of 65 is that "the State's unlawful termination . . . resulted in deleterious financial consequences . . . that will require [her] to work until she reaches age 65 or risk her family's economic security." Dkt. 96,

at 16. But this argument doesn't take account of all the relief that Barnes is receiving in this case. She fails to explain how an award of back pay and an award of front pay until the age of 59 would fail to put her in the same financial position she would have been in had she remained employed with the Department.

In light of all the other relief that Barnes is receiving, an award of front pay through the age of 65 would lead to double recovery, which isn't permitted. *See Collins v. Kibort*, 143 F.3d 331, 339–40 (7th Cir. 1998) ("The law abhors duplicative recoveries." (internal quotations and alterations omitted)). So the court will award Barnes front pay through the age of 59, using the difference between the average paycheck of her three highest-earning years at the Department ($980 per week) and her current paycheck at Porchlight ($652.40), for a total of $81,900 ($327.60 x 250 weeks).

2. **Future benefits**

Barnes concedes that she will have health insurance until she turns 59. And she doesn't attempt to quantify any costs that she is likely to incur because of any difference between the benefits she received from the Department and the benefits she receives from Porchlight. So the court declines to award Barnes damages related to future benefits.

D. **Summary of relief awarded**

The court will award Barnes the following equitable relief: (1) $115,220 in back pay; (2) $81,900 in front pay; (3) $8,523 in prejudgment interest; and (4) expungement of her personnel file. And the court will direct the clerk of court to enter judgment on this relief as well as the $600,000 awarded by the jury. Although many employment discrimination claims are subject to caps on compensatory damages under 42 U.S.C. § 1981a(b)(3), courts have held that § 1981a(b)(3), by its terms, doesn't apply to claims like Barnes's under § 504 of the

Rehabilitation Act. *See Roberts v. Progressive Indep., Inc.,* 183 F.3d 1215, 1224 (10th Cir. 1999); *Moreno v. Consolidated Rail Corp.,* 63 F.3d 1404, 1415 (6th Cir.) *rev'd en banc on other grounds,* 99 F.3d 782 (1996). If the Department believes that the award in this case is subject to a damage cap, it may move for a remittitur.

ORDER

IT IS ORDERED that:

1. Plaintiff Verla Barnes's motion for equitable relief, Dkt. 86, is GRANTED in part. Barnes is awarded the following monetary relief: $115,220 in back pay, $81,900 in front pay, and $8,523 in prejudgment interest.

2. The Wisconsin Department of Corrections is directed to expunge Barnes's personnel records of any alleged misconduct related to this case.

3. The clerk of court is directed to enter judgment on this relief and the relief awarded by the jury.

Entered January 8, 2020.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge