IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VERLA BARNES,

                              Plaintiff,

    v.                                                                            OPINION and ORDER

STATE OF WISCONSIN DEPARTMENT                        18-cv-105-jdp
OF CORRECTIONS,

                              Defendant.

---

      A jury awarded plaintiff Verla Barnes $600,000 in compensatory damages on her claims that the Wisconsin Department of Corrections violated the Rehabilitation Act, first by failing to reasonably accommodate her disability and then by firing her for filing a grievance. The court decided Barnes's requests for equitable relief, including back pay and front pay, awarding approximately $200,000. Dkt. 103. Three motions are now before the court: (1) the Department's motion for judgment as a matter of law and a new trial, Dkt. 114; (2) Barnes's motion for attorney fees, Dkt. 105; and (3) Barnes's request for costs, Dkt. 104.

      The Department hasn't shown that it is entitled to judgment as a matter of law on Barnes's failure-to-accommodate claim. A reasonable jury could find that the Department should have allowed Barnes to temporarily work a reduced caseload that was commensurate with Barnes's abilities and the number of hours she was working. But the court agrees with the Department that Barnes failed to adduce any evidence to support a finding that the Department terminated her for complaining about disability discrimination. The Department may have reached the wrong conclusion when it determined that Barnes had lied on an incident report, but the relevant question is "whether the justifications given are honest, not whether the sanction imposed was accurate, wise or well considered." *Hague v. Thompson Distribution Co.*,

436 F.3d 816, 824 (7th Cir. 2006). Barnes doesn't point to evidence that the Department is lying about its reasons for terminating her, so her retaliation claim must be dismissed. The court will also deny without prejudice the Department's motion for a new trial on damages, and Barnes's motions for fees and costs. The court's decision on the Department's motion for judgment as a matter of law could significantly affect the analysis for evaluating damages, fees, and costs, so it makes sense to take a fresh look at those issues, using the guidance provided in this opinion.

BACKGROUND

Barnes worked as a probation agent for the Department from 1998 to 2016. In 2015, she injured her foot on the job. After taking some time off, she transitioned back to work, but she says that the Department didn't give her the accommodation she needed. After a few months of allowing Barnes to work part-time, the Department placed Barnes on medical leave until she fully recovered. Barnes filed a grievance with the Wisconsin Equal Rights Division (ERD) about being placed on leave.

In January 2016, Barnes filed an incident report about something that happened to her while she was on the job outside the Dane County Courthouse. She reported that a woman had stumbled into her, almost causing Barnes to fall. Trial Exh. 509. The woman then "tried to hit [Barnes] in the face." *Id.* A man who was with the woman "started calling [Barnes] a fat ass nigger." *Id.* Afterwards, Barnes said that she felt some pain in her back. She also said in the incident report that the "entire ordeal could have been avoided" if the Department had better accommodated her foot injury. *Id.*

After conducting an investigation, the Department determined that Barnes had fabricated the incident. The Department relied primarily on video footage from cameras outside the courthouse. The footage showed Barnes, but it didn't show the alleged perpetrators. The Department then fired Barnes, relying on a policy that authorized termination for lying. Barnes denies that she lied, and she contends that the Department retaliated against her. The jury found both that the Department failed to accommodate Barnes and that her termination was retaliation for filing a grievance with the ERD.

ANALYSIS

A. Motion for judgment as a matter of law

1. Legal standard

The standard for a Rule 50 motion for a judgment as a matter of law is the same as a motion for summary judgment: whether a reasonable jury would have a legally sufficient evidentiary basis to find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Lawson v. Sun Microsystems, Inc.*, 791 F.3d 754, 761 (7th Cir. 2015). When applying this standard, the court may not weigh the evidence but instead must draw all reasonable inferences in favor of the nonmoving party. *Ruiz-Cortez v. City of Chicago*, 931 F.3d 592, 601 (7th Cir. 2019).

2. Reasonable accommodation claim

The Rehabilitation Act requires employers to provide reasonable accommodations to employees with a disability. *Yochim v. Carson*, 935 F.3d 586, 590 (7th Cir. 2019). The jury instructions, which neither side objects to in any respect, required Barnes to prove three elements to prevail on this claim: (1) the Department was aware that Barnes needed an

accommodation; (2) the Department failed to provide Barnes a reasonable accommodation; and (3) the Department knew that it was substantially likely that it had failed to provide Barnes a reasonable accommodation. Dkt. 83.

Barnes's brief could be clearer, but the court understands her to be contending that the Department failed to provide a reasonable accommodation because it didn't reduce her caseload from September 2015 (when she returned to work part time) until February 2016 (when her doctor cleared her to work full time).[1] Instead, Barnes says that the Department initially required her to work a full caseload on a part-time schedule and then forced her to take medical leave in January 2016, and she says that both actions were unreasonable. The court will first consider the parties' arguments related to the failure to reduce Barnes's caseload and then to the Department's decision to place Barnes on medical leave.

### a. Failure to adequately reduce Barnes's caseload

The Department seeks judgment on this claim for several reasons. First, the Department contends that a reduced caseload isn't a reasonable accommodation, citing *Terrell v. USAir*, 132 F.3d 621, 625 (11th Cir. 1998), and *Treanor v. MCI Telecommunications Corp.*, 200 F.3d 570, 574 (8th Cir. 2000), for the proposition that the Rehabilitation Act doesn't require an employer to create a part-time position for a full-time employee. But that's not what Barnes was asking for. Rather, she wanted her hours and caseload reduced *temporarily* while she recovered from her injury.

The Court of Appeals for the Seventh Circuit has recognized that providing a full-time employee with part-time work temporarily may be a reasonable accommodation, depending on

---

[1] If Barnes means to raise any other theory, she has forfeited it by failing to clearly articulate it.

the circumstances. *See Pals v. Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 498 (7th Cir. 2000) (rejecting view that a "request to return initially on a part-time basis disqualify[ies] [an employee] under the ADA," and observing that "[e]mployees who have experienced serious medical problems often return to work part-time and increase their hours until they are working full time.");[2] *see also McMannes v. Wisconsin Dep't of Workforce Dev.*, No. 17-cv-758-jdp, 2019 WL 95637, at *5 (W.D. Wis. Jan. 3, 2019) ("A transition period can be a reasonable accommodation under certain circumstances, particularly when the employee is recovering from a recent injury or short-term medical condition."). The Department doesn't explain why it would be unreasonable to allow Barnes to work part-time for a few months, so the court rejects this argument.

Second, the Department says that it wasn't aware that Barnes wanted a reduced caseload. This is a stronger argument. It's undisputed that Barnes never asked the Department for a reduced caseload, and an employer doesn't have an obligation to provide an accommodation that it doesn't know that an employee needs. *See Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015) ("A plaintiff typically must request an accommodation for [her] disability to claim that [s]he was improperly denied an accommodation under the ADA.").

But the employer's duty of reasonable accommodation includes the requirement to "engage in [a] flexible interactive process and to make [a] good faith effort to determine what accommodation is necessary." *McCray v. Wilkie*, 966 F.3d 616, 622 (7th Cir. 2020). So when

---

[2] The Americans with Disabilities Act and the Rehabilitation Act impose the same requirements on employers, *see CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014), so the court will rely on case law applying both laws.

5

the need for a particular accommodation is obvious, the plaintiff's claim doesn't fail simply because she failed to expressly request the accommodation. *See Sullivan v. Spee-Dee Delivery Serv., Inc.*, 138 F. Supp. 3d 1050, 1058 (W.D. Wis. 2015).

In this case, the Department knew that Barnes needed *some* accommodation because it was allowing her to work reduced hours because of her injury. The jury was entitled to infer that it should have been obvious to the Department that Barnes needed a reduced caseload along with reduced hours. Otherwise, Barnes would be required to complete much of the same work, but in only a fraction of the time. That would make Barnes's job harder and more stressful, not easier.

Third, the Department contends that Barnes *was* working a reduced caseload. The Department points out that it measures an employee's caseload using a point system, that a full caseload is approximately 200 points, and that Barnes's caseload was less than 200 points from September to January 2016. But Barnes testified that she was working a full caseload during the time, and the jury was entitled to credit that testimony. The Department doesn't cite any evidence that it directed or approved a reduced caseload for Barnes. In fact, Barnes testified that her supervisor, Mike Ekedahl, said, "I guess" when she asked him whether she was "expected to continue covering my caseload." Dkt. 101, Trial Trans., at 40:9–12. And even under the Department's version of events, Barnes was assigned a caseload of 150 points when she returned to work in September while she was supposed to be working only 12 hours a week. That is far from a commensurate reduction in the amount of work that Barnes was supposed to do. A reasonable jury could have found that the Department was on notice that the accommodation wasn't reasonable.

6

Fourth, the Department says that it provided other reasonable accommodations, such as removing some of Barnes's responsibilities that required more walking. The Department is correct that an employee isn't entitled to the accommodation of her choice, *Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 682-83 (7th Cir. 2014), but the accommodation provided must enable the employee to perform her job, *see Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017). The Department identifies no basis for believing that the limited accommodations it provided were sufficient under that standard, based on the size of Barnes's workload.

Fifth, the Department says that Barnes would not have been able to perform the essential functions of her job, even if the Department had reduced Barnes's caseload. Specifically, the Department says that Barnes acknowledges that she was unable to perform tasks such as conducting home visits and taking offenders into custody. Again, these were temporary restrictions, so Barnes's inability to perform those tasks doesn't foreclose her claim. As discussed above, the Department *did* provide these accommodations, and it cites no evidence that the "costs of the accommodation[s] [were] clearly disproportionate to the benefits [they] produce[d]," which is the standard for reasonableness in the jury instructions. Dkt. 83, at 6.

Sixth, the Department says that providing a reduced caseload would have imposed an "undue hardship" on the Department, so the Department can't be held liable for failing to provide the accommodation. But undue hardship is an affirmative defense that the Department must prove. *Majors v. General Electric Co.*, 714 F.3d 527, 535 (7th Cir. 2013). Because the Department didn't raise the defense at trial, *see* Dkt. 63, at 2, it forfeited the defense. *See Bradford-White Corp. v. Ernst & Whinney,* 872 F.2d 1153, 1161 (3d Cir. 1989) ("[I]t would be

7

grossly unfair to allow a plaintiff to go to the expense of trying a case only to be met by a new defense after trial."). In any event, the Department doesn't cite any evidence that the accommodation would impose an undue hardship, so the defense fails on the merits as well.

### b. Involuntary placement on medical leave

On January 21, 2016, the Department placed Barnes on medical leave, even though she didn't request to be placed on leave. A human resources supervisor gave the following explanation for that decision at trial:

> Verla Barnes was placed on [medical leave] because she had been on light duty for a number of months, she had had an incident occur near our State Office Building that put her at risk, she had mentioned hurting her back, and she was still of a condition where she was unable to do certain aspects of her position.

Dkt. 100, Trial Trans., at 42:7–12. The Department refers to Barnes's placement on leave as an accommodation, but Barnes rejects that characterization because it required her to use paid leave that she otherwise would have retained.

Using an employee's medical leave to allow the employee to recover can be a reasonable accommodation under some circumstances. *See Swanson v. Vill. of Flossmoor,* 794 F.3d 820, 827–28 (7th Cir. 2015); *Murray v. AT&T Mobility LLC*, 374 F. App'x 667, 671 (7th Cir. 2010). But the jury was entitled to find in this case that the accommodation was not a reasonable one. The Department did not consult with Barnes or her doctor before placing her on leave. And the only specific reason the Department gives for the decision was that Barnes said she hurt her back at the courthouse. But Barnes denies that the new injury affected her ability to do her job, and the Department cites no evidence to the contrary.

The Department also says that it placed Barnes on leave because she had been on light duty "for a number of months," but that is an observation, not a reason. The Department

8

doesn't cite a policy it had for limiting the amount of time it could allow Barnes to work part-time, and it doesn't contend that it was getting too difficult to provide accommodations for her. So the court declines to overturn the jury's liability verdict on Barnes's accommodation claim.

### 3. Retaliation claim

The Rehabilitation Act prohibits employers from discriminating against an employee for "oppos[ing] any act or practice made unlawful by" the Act "or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the Act. 42 U.S.C. § 12203; 29 U.S.C. § 794(d) (incorporating § 12203). A retaliation claim has three elements: (1) the plaintiff engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *Guzman v. Brown Cty.*, 884 F.3d 633, 642 (7th Cir. 2018). The Department challenges Barnes's ability to satisfy the first and third elements.

### a. Protected conduct

At trial, Barnes proposed only one example of a protected activity to be included in the jury instructions, which was an administrative grievance that she filed with the Wisconsin Equal Rights Division (ERD) on February 18, 2016. *See* Dkt. 83, at 8; Trial Exh. 12. In her opposition to the Department's motion for judgment as a matter of law, Barnes also contends that she was engaging in protected conduct when she told the human resources coordinator that "she didn't understand why she was being put out on leave, asked to provide a fitness for duty form, that DOC's messing with her and that she's going to hire an attorney and sue us." Trial Exh. 50. The jury instructions didn't direct the jury to consider whether the Department retaliated against Barnes for those statements, Dkt. 83, so Barnes cannot rely on them now.

*See Petkus v. Richland Cnty., Wis.*, 767 F.3d 647, 653 54 (7th Cir. 2014) (party forfeits challenge to jury instructions that she didn't object to at trial).

As for the ERD complaint, it is titled "Family and Medical Leave Complaint," and it states that Barnes is "alleging a violation of the Wisconsin Family Medical Leave Act." Trial Exh. 12. In the section of the complaint explaining why she "believe[d] [her] rights under the Family and Medical Leave Act were violated," Barnes wrote the following:

> I am currently on Workers Compensation . . . I was forced by [my] employer to take FMLA leave after filing a complaint incident report on January 15, 2016. I received a call . . . from [the] regional chief stating I am effectively on FMLA due to no improvement of my condition. I was forced to use my paid time off while on FMLA.

*Id.*

The Department contends that the ERD complaint isn't protected activity under the Rehabilitation Act because Barnes was using the complaint to assert her rights under the FMLA, not the Rehabilitation Act. In response, Barnes says that the Department "waived" this issue because it stipulated before trial that "Plaintiff shall be allowed to advance an argument and put on evidence that placing Plaintiff on FMLA was disability discrimination under the Rehabilitation Act." Dkt. 66. But the Department's contention isn't inconsistent with the stipulation. Barnes did contend at trial that her placement on medical leave represented a failure to provide a reasonable accommodation, and the court has upheld that portion of the jury's verdict, as discussed above. But the stipulation says nothing about whether the ERD complaint qualifies as protected conduct under the Rehabilitation Act, so the Department didn't waive this issue.

Barnes offers almost no substantive argument in support of a conclusion that her ERD complaint is protected under the Rehabilitation Act. She says only that her ERD complaint

10

"can also be viewed as asserting her rights under the Rehabilitation Act, as Barnes had been placed on FMLA against her will because of her disability." Dkt. 119.

Neither side cites any case law considering what qualifies as protected activity for the purpose of a retaliation claim under the Rehabilitation Act. But case law applying Title VII's retaliation provision, which is similarly worded to the provision at issue in this case, provides guidance. For example, when discussing a complaint about sex discrimination, the court of appeals stated: "Although an employee need not use the magic words 'sex' or 'gender discrimination' to bring her speech within Title VII's retaliation protections, she has to at least say something to indicate her gender is an issue." *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (internal quotation marks and alterations omitted). More generally, the question is whether the plaintiff "has produced evidence from which it could be reasonably inferred that [the employer] more likely than not knew [the plaintiff] was concerned about [the prohibited] discrimination." *Abuelyaman v. Illinois State University*, 667 F.3d 800, 814 -815 (7th Cir. 2011) (internal quotation marks omitted).

In this case, Barnes's ERD complaint doesn't say anything about the Rehabilitation Act, disability discrimination, or a failure to accommodate a disability. Barnes said only that she believed it was unfair that she was being forced to take FMLA leave. That didn't give the Department notice that Barnes was raising an issue about her disability, so the Department is entitled to judgment as a matter of law on this ground.

### b. Evidence of causation

Even if Barnes's administrative complaint were protected conduct, her retaliation claim would still fail as a matter of law because Barnes didn't adduce evidence that the Department terminated her or took any other adverse action against her because of that complaint. Barnes

11

relies primarily on the temporal proximity between when she first threatened to get a lawyer (January 22, 2016) and when the Department first began investigating what happened at the courthouse (in "early February 2016," Dkt. 99, Trial Trans., at 47:6–7). But this argument fails for multiple reasons.

As an initial matter, as discussed above, the only potential protected conduct at issue in this case was Barnes's administrative complaint, which Barnes filed *after* the Department began its investigation, so the complaint could not have been a motivating factor in the decision. *Kotaska v. Fed. Express Corp.*, 966 F.3d 624, 633 (7th Cir. 2020) Also, temporal proximity is rarely enough to support a retaliation claim. *Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017). And this is not one of the rare cases that it is.

The Department explained that its decision to investigate the courthouse incident didn't start as an investigation of *Barnes*. Rather, it was an investigation of the individuals who assaulted Barnes and used a racial slur against her. Troy Enger (an assistant chief for the Wisconsin Department of Community Corrections) testified that he was "pretty upset that we had had a staff member who was assaulted, and so we were really looking to see who the individuals were, who they are, if we could identify them, and if ultimately we could refer that to law enforcement." Dkt. 99, Trial Trans., at 47:22–25. Barnes doesn't challenge that testimony. In any event, the Department would have had no way of knowing when it started the investigation what the videos would show, so it simply isn't logical to contend that the Department initiated the investigation with the hope that it would find incriminating information that it could use against Barnes. When "there are reasonable, non-suspicious explanations for the timing" of the defendant's conduct, closeness in time isn't enough to

12

support a retaliation claim. *See Terry v. Gary Cmty. Sch. Corp.*, 910 F.3d 1000, 1008 (7th Cir. 2018).

The other evidence Barnes relies on isn't helpful either. First, Barnes points out that the video capturing the courthouse incident had significant blind spots, so it's possible that the incident occurred as Barnes reported, even if the video showed no evidence of that. But this argument is based on a fundamental misunderstanding of what Barnes was required to prove at trial.

The purpose of the trial wasn't to relitigate the question whether Barnes had lied when she reported that she had been harassed at the courthouse. Rather, the question was whether the Department's asserted justification for firing Barnes was only a pretext for retaliating against Barnes because she filed a complaint with the ERD. So it wasn't enough for Barnes to prove that the Department made a mistake in finding that she lied; she had to prove that the *Department* was lying about its true reason for terminating her. *See Simpson v. Beaver Dam Cmty. Hospitals, Inc.,* 780 F.3d 784, 797 (7th Cir. 2015). Barnes cites no evidence to support such a finding. Although reasonable minds could differ on how compelling the video footage was, there is no dispute that the Department found no evidence corroborating Barnes's account, and Barnes has offered none. Under these circumstances, the presence of blind spots in the video footage isn't a basis for inferring retaliatory intent. It is only evidence that the Department might have made a mistake.

Second, Barnes says that the Department failed to preserve all of the video footage it reviewed. Instead, it preserved only those portions that Barnes appeared in. But it isn't clear what point Barnes is trying to make. Barnes doesn't contend that she was denied the opportunity to request that any video footage be preserved, she doesn't contend that the

Department violated any rules about preserving evidence, and she didn't ask for an adverse inference instruction at trial. Barnes also doesn't explain what she believes the deleted footage would have shown to help her case. So the fact that some footage is missing doesn't support her claim.

Third, Barnes contends that Ekedahl (Barnes's supervisor) "pre-judge[d] . . . the courthouse incident," Dkt. 119, at 22, because he wrote in an email that "this all feels weird to me" after he reviewed Barnes's incident report. Trial Exh. 34. Barnes doesn't contend that Ekedahl was involved in the decision to initiate an investigation or to terminate her, so Ekedahl's statements have limited relevance. In any event, Ekedahl's comment wasn't directed at the content of Barnes's incident report; he was saying that it was "weird" that Barnes "didn't notify me right away" about the incident. *Id.* So the statement isn't relevant to showing retaliatory intent either.

Fourth, Barnes cites a chronology prepared by a note taker for the investigator assigned to the courthouse incident. Trial Exh. 18. The entry for March 21, 2016 states: "Spoke to the investigator about interviewing the employee and asking questions about the bailiff and to bring 'some heat' to the employee. Investigator will schedule another f/u interview." *Id.* The previous entry states that "the employee is sticking to her story" despite the video evidence. *Id.*

Barnes contends that the statement to bring "some heat" is evidence that the entire investigation was a "sham." Dkt. 119, at 22. But there are multiple problems with that contention: (1) Barnes never asked the author of the comment or anyone else with personal knowledge what the comment meant, so Barnes is simply speculating; (2) the comment has nothing to do with the decision to conduct an investigation, so it can't be evidence of the legitimacy of that decision; (3) Barnes hasn't cited any evidence that the investigator tainted

the evidence or otherwise improperly influenced any of the decision makers in this case; (4) even if the comment is evidence that the investigator was acting aggressively, that on its own isn't evidence of a motive to retaliate against Barnes for filing a complaint with the ERD.

Fifth, and finally, Barnes cites testimony of two coworkers, Leah Hartman and Kay Valdes. Hartman said that an unidentified union representative informed her that employees who were injured risked being terminated, which confirmed a "general feeling" in the office. Dkt. 101, Trial Trans., at 81:18–25. Valdes said that the investigation against Barnes was "different" from other investigations she had seen and that it was "strange" that the Department would investigate such a good employee like Barnes. Dkt. 61, Video Dep., at 16:18–17:7.

Neither employee's testimony is evidence of retaliation. Hartman's testimony is untethered to the facts of this case. She provided no examples of the Department retaliating against employees for seeking accommodations. A "feeling" isn't evidence. Similarly, Valdes provided no specifics about how Barnes was treated differently from any other employee. It is undisputed that the Department has a policy of terminating an employee for lying and that it has consistently applied that policy.

"Overturning a jury verdict is not something that a court should do lightly." *Walker v. Bd. of Regents of Univ. of Wisconsin Sys.*, 410 F.3d 387, 396 (7th Cir. 2005). And Barnes may be correct that the Department reached the wrong conclusion when it found that she lied on her incident report. But mistakes aren't discrimination, and the Rehabilitation Act doesn't prohibit employees from making bad decisions. Barnes has adduced no evidence of a retaliatory motive, so the Department is entitled to judgment as a matter of law on the retaliation claim.

**B. Motion for a new trial**

The Department seeks a new trial under Federal Rule of Civil Procedure 59 on two grounds: (1) it was unfairly prejudiced by the court's decision to try liability and damages together; and (2) the damages award is excessive.

The court rejects the Department's first contention. The default rule under the Federal Rules of Civil Procedure is that issues of liability and damages are tried together. But "[u]nder Federal Rule of Civil Procedure 42(b), a district judge may separate claims or issues for trial if the separation would prevent prejudice to a party or promote judicial economy." *Chlopek v. Fed. Ins. Co.*, 499 F.3d 692, 700 (7th Cir. 2007). The decision whether to bifurcate is discretionary, *Volkman v. Ryker*, 736 F.3d 1084, 1088–89 (7th Cir. 2013), but it's not clear whether Rule 42(b) requires bifurcation in some cases. Cases such as *Chlopek* and *Volkman* involved challenges to a decision to bifurcate, not a denial of such a request. The Department doesn't cite any cases in which a court found that a party had a right to bifurcation.

Even if the court assumes that bifurcation may be required in some cases, the Department hasn't shown that this is such a case. The Department says that bifurcation was necessary to avoid prejudice because Barnes offered "excellent evidence" about how the Department's decision harmed her, evidence that the jury wouldn't have heard during the liability phase if the trial had been bifurcated. Dkt. 117, at 25. But that's not enough to show unfair prejudice. If it were, it would require the court to bifurcate any case involving a plaintiff with substantial damages. The Department cites no authority for such a far-reaching conclusion.

The Department also says that it was prejudiced because it didn't know until the final pretrial conference that the trial wasn't going to be bifurcated, and it didn't have enough time

16

to prepare its case for a unified trial. This argument fails because the Department doesn't explain what it would have done differently if the trial had been bifurcated.

As for the Department's contention that the damages award was excessive, the court's order granting the Department's motion for judgment as a matter of law on Barnes's retaliation claim significantly changes the analysis for assessing the validity of the damages award. So the court will deny the Department's motion for a new trial on damages without prejudice, as well as Barnes's motions for fees and costs. But both sides may renew their motions, taking into account the court's rulings in this opinion.

ORDER

IT IS ORDERED that:

1. The Wisconsin Department of Corrections' motion for judgment as a matter of law, Dkt. 114, is DENIED as to Verla Barnes's reasonable accommodation claim. The motion is GRANTED as to Barnes's retaliation claim.

2. The clerk of court is directed to enter an amended judgment that reflects the dismissal of the retaliation claim and that reduces the amount by $50,000, which is the amount awarded on that claim.

3. The Department's motion for a new trial based on the court's decision to try liability and damages together, Dkt. 114, is DENIED.

4. The Department's motion for a new trial on damages, Dkt. 114, is DENIED without prejudice.

5. Barnes's motions for fees and costs, Dkt. 105 and Dkt. 106, are DENIED without prejudice.

6. The parties may renew the motions denied without prejudice within the deadlines set by the Federal Rules of Civil Procedure.

Entered September 22, 2020.

                              BY THE COURT:

                              /s/

                              _____
                              JAMES D. PETERSON
                              District Judge