IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VERLA BARNES,

                        Plaintiff,

v.                                                     OPINION and ORDER

STATE OF WISCONSIN DEPARTMENT            18-cv-105-jdp
OF CORRECTIONS,

                        Defendant.

---

Plaintiff Verla Barnes sued her former employer, the Wisconsin Department of Corrections, under the Rehabilitation Act for failing to accommodate a foot injury and then retaliating against her for filing a grievance. After a trial, a jury found in Barnes's favor on both claims, awarding $550,000 for the failure to accommodate and $50,000 for the retaliation. The court later granted the Department's motion for judgment as a matter of law on the retaliation claim. Dkt. 114. The Department now seeks a remittitur on the $550,000 award for the failure-to-accommodate claim, or in the alternative, a new trial. Dkt. 135. Barnes moves for fees and costs. Dkt. 123.

The court will grant the Department's motion for a remittitur or, in the alternative, a new trial because the $550,000 awarded for the failure-to-accommodate claim isn't rationally related to the evidence. The court will give Barnes an opportunity to accept a reduced award of $150,000 before setting a new trial date. Holding a new trial could affect Barnes's requests for fees and costs, so the court will deny that request without prejudice.

BACKGROUND

Barnes worked as a probation agent for the Department from 1998 to 2016. In 2015, she injured her foot on the job. After taking some time off, she transitioned back to work, but the Department didn't give her the accommodations she needed, such as a reduced caseload.

In 2016, she reported that someone had stumbled into her and used a racial epithet while she was on the job at the Dane County Courthouse. After an investigation, the Department determined that Barnes had fabricated the incident. The Department then fired Barnes, relying on a policy that authorized termination for lying.

At trial, Barnes contended that the Department violated the Rehabilitation Act in two ways: (1) failing to accommodate her foot injury while she was recovering; and (2) terminating her in retaliation for filing a grievance with the Wisconsin Equal Rights Division. Dkt. 83, at 7–8. The jury found in Barnes's favor on both claims, awarding $550,000 in pain and suffering for the failure to accommodate and $50,000 in pain and suffering for the retaliation claim. Dkt. 85. The court later determined that Barnes was entitled to $115,220 in back pay, $81,900 in front pay, $8,523 in prejudgment interest, and an injunction directing the department to expunge Barnes's disciplinary record. Dkt. 103.

After the court entered judgment, the Department moved for judgment as a matter of law on both claims or, in the alternative, a new trial. Dkt. 114. Barnes moved for fees and costs. Dkt. 105. The court denied the department's motion for judgment as a matter of law on Barnes's failure-to-accommodate claim but granted the motion on the retaliation claim. Dkt. 121.

On the failure-to-accommodate claim, the court concluded that the jury could have reasonably found that the Department denied Barnes a reasonable accommodation by failing

2

to reduce her caseload while she was working part time and by requiring her to take unpaid medical leave between January 21, 2016, and February 8, 2016. *Id.* at 3–9. On the retaliation claim, the court concluded that there was no evidence that the Department fired Barnes because she filed a grievance. *Id.* at 11–15. At most, the Department made a mistake, which wouldn't be a violation of the Rehabilitation Act. As a result, the court amended the judgment to subtract the $50,000 that the jury awarded on the retaliation claim.

In the same order, the court denied without prejudice Barnes's motion for fees and costs and the Department's motion for a new trial on damages. *Id.* at 16–17. The court's order granting the Department's motion for judgment as a matter of law on Barnes's retaliation claim significantly changed the analysis for assessing the validity of the damages award and Barnes's fee request, so the court gave the parties an opportunity to file renewed motions. *Id.*

ANALYSIS

A. Motion for a remittitur, or in the alternative, a new trial on damages

1. Legal standard

The sole question raised by the department's motion for a remittitur or, in the alternative, a new trial is whether $550,000 in compensatory damages is excessive for Barnes's failure-to-accommodate claim. When considering an objection to a damages award, the court considers two factors: whether the jury's verdict is rationally related to the evidence and whether the award is roughly comparable to awards made in similar cases. *Green v. Howser*, 942 F.3d 772, 780–81 (7th Cir. 2019).[1] In determining whether there is a rational relationship,

---

[1] The court of appeals sometimes also asks whether the award was "monstrously excessive," but that is simply another way of asking whether the award is rationally related to the evidence, so

"the district court must review the trial record as a whole in the light most favorable to the verdict." *Adams v. City of Chicago*, 798 F.3d 539, 543 (7th Cir. 2015).[2]

In her brief, Barnes emphasizes the deference owed to the jury's determination and the limited nature of the court's review. Dkt. 143, at 3–11. But those considerations are already factored into the standard of review. The deference owed to the jury is not enough to preserve a damages award that is neither rationally related to the evidence nor comparable to verdicts in similar cases. *See Spinnenweber v. Laducer*, 983 F.3d 301, 306 (7th Cir. 2020) (affirming district court's remittitur when verdict wasn't rationally related to the evidence).

## 2. Failures to accommodate

The court's first task is to identify the relevant conduct that harmed Barnes. In her brief, Barnes identifies four ways that the Department failed to accommodate her disability: (1) failing to reduce her caseload between September 2015 and January 2016; (2) requiring her to take medical leave between January 21 and February 8, 2016; (3) refusing to postpone self-defense training shortly after hurting her foot; and (4) assigning her presentence investigations, which required more walking.

Barnes didn't identify the last two alleged failures to accommodate in her complaint, Dkt. 22, in the summary of her claims that she submitted before trial, Dkt. 56, or in her brief

---

it isn't necessary to consider that factor separately. *Green*, 942 F.3d at 781.

[2] In *Lewis v. McLean*, the court of appeals held that a district court reviewing a motion for a new trial must view the evidence "neutrally" rather than in favor of the prevailing party. 941 F.3d 886, 893 (7th Cir. 2019). But that was in the context of considering whether a liability verdict was "against the manifest weight of the evidence," *id.* at 891, so *Adams* and *Lewis* are not necessarily in tension. Even if they are, the court need not resolve the tension in this case because the damages award was excessive, regardless of whether the evidence is viewed neutrally or in Barnes's favor.

in opposition to the Department's motion for judgment as a matter of law, Dkt. 119. But Barnes did testify about those issues at trial. *See* Trial Trans., Dkt. 101, at 21:3–9, 34:25–37:4, 48:14–16. The Department doesn't contend that it didn't have fair notice of those failures to accommodate, and it doesn't object to considering damages related to the training. The Department does object to considering the presentence investigations, alleging that Barnes didn't have any work restrictions related to walking at the relevant time. The court need not consider that issue because there is a more fundamental problem: Barnes cites no testimony or other evidence that the presentence investigations exacerbated her injury or otherwise harmed her in any relevant way. She testified that she was frustrated because one investigation was assigned to her shortly before the report was due, but she said nothing about any difficulties relating to her injury. *Id.* at 48:14–50:18. In the absence of any evidence of harm, the presentence investigations aren't relevant. The court will limit its consideration to evidence of damages caused by the failure to reduce Barnes's caseload, the forced medical leave, and the refusal to postpone self-defense training.

### 3. Scope of the relevant issues

The next task is to clarify the issues raised by the Department's motion. In arguing that the damages award is supported by the evidence, Barnes repeatedly discusses law and evidence related to proving that the Department violated the Rehabilitation Act. *See* Dkt. 143, at 8–10, 15–17, 19. But the court has already upheld the jury's finding that the Department failed to provide Barnes with a reasonable accommodation, so that discussion isn't relevant to the issues before the court. She also emphasizes the wrongfulness of the Department's conduct, stating that Department staff acted "with knowledge of their unlawfulness" and that the Department's conduct was part of a pattern of conduct against other employees. *Id.* at 19–20. The

Department's culpability might be relevant to punitive damages, but those aren't at issue. The question raised by the Department's motion isn't whether the Department failed to accommodate Barnes or whether the Department needs to be punished or deterred. Rather, the question is whether and how Barnes was harmed by the Department's failure to accommodate her.

### 4. Evidence of damages

The court's final task is to consider the evidence of damages caused by the failures to provide a reasonable accommodation. Barnes doesn't identify any economic damages that she suffered because of any of the failures to accommodate her, such as lost wages from being placed on leave involuntarily, so the court won't consider that issue. The question is whether the evidence of Barnes's physical and emotional pain and suffering caused by her caseload, the involuntary medical leave, and the participation in a self-defense training is rationally related to a finding that Barnes suffered $550,000 in compensatory damages.

In its opening brief, the Department summarizes what it sees as the relevant evidence presented by Barnes to support damages on her failure-to-accommodate claim. First, it cites Barnes's testimony that she was in pain and felt lightheaded during the self-defense training. Dkt. 101, Trial Trans., 36:7–37:2. She also said that she "believe[s] [she] fainted or something like that." *Id.* at 36:23–24. Second, Barnes testified that she was "frustrated" that she was "working outside [her] limited hours," *id.*, at 44:14–23, she was "totally confused" by the decision to place her on medical leave, *id.* at 53:15–54:6, and she was generally "frustrated" and "upset" about the Department's failure to accommodate her, *id.* at 89:17–90:13. Third, former coworkers testified that Barnes seemed to be in pain during the self-defense training

and "nearly passed out" and that she seemed sad and frustrated after she broke her foot. Dkt. 98, Trial Trans., 80:1–20 and Dkt. 101, Trial Trans., 22:16–23.

Barnes doesn't cite any additional evidence relating specifically to harm caused by the Department's failure to accommodate her. She cites one additional statement she gave in response to her counsel's request at trial to "explain as best you can how [you were] damaged as a person because of the failure to accommodate and the retaliatory termination." *Id.* 64:10–13. Without distinguishing between the failure to accommodate and the termination, Barnes said:

> I lost my dignity. I'm isolated. I'm no longer active in the community as I used to be. I avoid people as much as I can. I just do enough to get by with my family. I'm not that outgoing Verla. I push myself. It takes a lot of energy to do it. I had a compassion to be around people to do it. I don't want to be around people. I avoid it as much as I can.

*Id.* 64:15–21. A loss of dignity and a sense of isolation are obvious results of being wrongly terminated, but it's less clear why a failure to provide reasonable accommodations for a foot injury would lead to those results. Barnes doesn't cite any testimony in which she explained the connection between those feelings and the failure to accommodate her. One coworker did testify that Barnes was "very isolated" after she injured her foot, but the coworker didn't elaborate. Dkt. 98, Trial. Trans., 80:11–16.

Even if the court assumes that the Department's failures to accommodate her contributed to the harm she later suffered because of her termination, the $550,000 compensatory damages award isn't rationally related to the evidence. The self-defense training lasted one day. Barnes doesn't allege that it exacerbated her injury or affected her recovery. The leave lasted less than three weeks. Although the leave was involuntary, it wasn't disciplinary. Rather, the Department placed Barnes on medical leave because it determined

7

that her injury prevented her from performing her job at the time. Barnes doesn't identify any stigma that was associated with being placed on leave.

The refusal to reduce Barnes's caseload while she was recovering was longer lasting and more substantial. But Barnes points to little evidence about the effect of her caseload on her physical or emotional state. Feeling upset, frustrated, confused, and isolated are real injuries, but Barnes points to no evidentiary basis for a finding that they justify a verdict of $550,000 in this case. The court of appeals has found it appropriate to reduce damages in other cases in which the plaintiff provided only vague testimony about her pain and suffering. *See Marion County Coroner's Office v. EEOC*, 612 F.3d 924, 931 (7th Cir. 2010).

The award in this case was much higher than awards in other cases involving a failure to accommodate a disability:

- In *EEOC v. AutoZone, Inc.*, 707 F.3d 824, 833 (7th Cir. 2013), the court upheld a $100,000 award for pain and suffering for failing to provide a reasonable accommodation for a back injury. The employee "provided a detailed account of the effect that [his] injuries had on his daily life while working at AutoZone," including that he "experienced near-daily pain that left him incapable of performing common activities, such as putting on his clothes and taking a shower." *Id.* at 833–34.

- In *EEOC v. Wal-Mart Stores, Inc.*, 503 F. Supp. 3d 801, 819–20 (W.D. Wis. 2020), this court upheld a $200,000 award for compensatory damages in a case involving a mentally disabled employee who was terminated because of his disability. The court noted testimony from several witnesses that the employee was "distraught" and "devastat[ed]" after he was terminated, so much so that he "would sit and pour water into an imaginary hole in the floor." *Id.* He also had increased anger and anxiety. *Id.*

- In *Burnett v. Ocean Properties, Ltd.*, 422 F. Supp. 3d 400, 430–31 (D. Me. 2019), *aff'd*, 987 F.3d 57 (1st Cir. 2021), the court upheld a $150,000 award for pain and suffering in a case involving a paraplegic who didn't receive a reasonable accommodation for opening doors. The court cited testimony that the employee was unable "to get through the door to his place of employment without a daily struggle, a struggle that drew attention to his disability," that the failure to accommodate him "made him feel frustrated and angry, lowered his self-esteem,

8

caused him stress and depression about going to work," and that the employee injured his wrist when trying to open the door. *Id.*

- In *Olian v. Bd. of Educ. of City of Chicago*, 631 F. Supp. 2d 953, 962–63 (N.D. Ill. 2009), the court upheld a $244,000 award for pain and suffering in a case involving a teacher with a speech impairment who didn't receive a reasonable accommodation. The plaintiff submitted evidence that she became depressed and "very agitated" and "was destroyed" by the problems she was experiencing at the school. Those problems included physical abuse from students, which she blamed on her difficulties communicating with students. *Id.* She also was constantly "very hoarse" and "could hardly talk." *Id.*

Awards for pain and suffering in the employment context rarely exceed $250,000, even when they involve a termination or severe harassment.[3] Although Barnes was terminated, her termination is no longer part of the case, so the relevant evidence is limited to harm caused by the failures to accommodate her.

The court of appeals recently upheld awards of $300,000 and $350,000 for pain and suffering, but those cases aren't comparable. In *Vega v. Chicago Park Dist.*, 954 F.3d 996, 1008–09 (7th Cir. 2020), the court upheld a $300,000 award for pain and suffering in a discriminatory discipline and termination case. The plaintiff testified "extensively about the emotional, mental, and physical distress that she suffered for the final six months of her

---

[3] *See Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1022 (7th Cir. 2016) (upholding $50,000 award for emotional distress on discriminatory termination claim when employee testified that she became depressed, that she had worked continuously since she was 16, and that she remained unemployed for 16 months after she was fired); *Farfaras v. Citizens Bank & Trust of Chi.*, 433 F.3d 558, 560–64, 566–67 (7th Cir. 2006) (upholding an award of $200,000 in compensatory damages because the employee had been repeatedly and inappropriately touched and intimidated, among other forms of sexual harassment); *Deloughery v. City of Chi.*, 422 F.3d 611, 613–14, 619–21 (7th Cir. 2005) (upholding an award of $175,000 in compensatory damages for an employee's emotional distress after her employer failed to promote her); *Tullis v. Townley Engineering & Manufacturing Co.*, 243 F.3d 1058, 1068 (7th Cir. 2001) (affirming an award of more than $80,000 for retaliatory discharge that caused an employee who remained out of work for ten months to feel "low" and "degraded").

employment. She also testified that she was unemployed for a year and constantly worried about her inability to afford necessary medication and to support her mother." In *Green v. Howser*, 942 F.3d 772, 781 (7th Cir. 2019), the court upheld a $350,000 award for the sheriff's wrongful removal of the plaintiff's daughter from her custody for an extended period. The sheriff placed the daughter with "people who had recently blackmailed [the plaintiff] with nude photos, tried to break up her marriage, vindictively fired her from her job, and conspired with law enforcement officers to forcibly take her child." *Id.* The removal also led to a "lengthy custody battle" for her daughter. *Id. Vega* and *Green* involved more extreme facts than this case, but they resulted in significantly smaller verdicts, so they are additional indicators that the verdict in this case is not rationally related to the evidence.

Barnes doesn't cite any cases in which a court upheld a compensatory damages verdict as large as hers under similar circumstances. The only case she does cite is *Jennings v. Town of Stratford*, 263 F. Supp. 3d 391, 407 (D. Conn. 2017), but even that case involved an award of $230,000 for emotional distress after the plaintiff lost his job. The plaintiff testified that the loss of his job "completely devastated him" and led to "a significant period of unemployment." *Id. Stratford* doesn't support a conclusion that the award in this case is appropriate.

Barnes is correct that "[a]wards in comparable cases are just one factor the Court considers." Dkt. 143, at 24. Other awards are simply a "reference point" and don't establish the outer bounds of reasonableness. *Vega*, 954 F.3d at 1008. But it is noteworthy that the Barnes has failed to cite and the court has been unable to find a single case that resulted in an award that was remotely comparable to hers.

It could be appropriate to approve an unusually large award if Barnes had identified unique or special circumstances in this case that justify a larger award. But Barnes hasn't done

that. Her testimony about her physical pain and suffering was limited. She offered somewhat more evidence about her mental pain and suffering, but even that testimony lacked detail, and some of it wasn't connected to the failures to accommodate her. Based on the evidence presented at trial and the damages awarded in comparable cases, the court concludes that an award for pain and suffering exceeding $150,000 is not rationally related to the evidence. As noted above, $200,000 to $250,000 tends to be the most that a plaintiff receives for pain and suffering in the employment context. The relevant claim in this case isn't related to a termination, and the evidence of harm was limited, so an additional reduction is appropriate.

The court will give Barnes an opportunity to decide whether she will accept a reduced award of $150,000. If she does not accept, the court will order a new trial on damages for the failure to accommodate.

### B. Motions related to equitable relief

The court previously awarded Barnes back pay and front pay in light of the jury's determination that Barnes's termination was unlawful retaliation. Dkt. 103, at 14. The court also directed the Department to expunge Barnes's personnel records of any alleged misconduct related to this case. *Id.* The parties agree that an award of equitable relief is no longer appropriate after the court granted the Department's motion for judgment as a matter of law on the retaliation claim. Dkt. 131 and Dkt. 134. As a result, the court will enter an amended judgment that removes all of the equitable relief after Barnes determines whether she will accept the remittitur.

### C. Motion for attorney fees and costs

The Rehabilitation Act gives the court to discretion to award reasonable attorney fees to the prevailing party. 29 U.S.C. § 794a(2)(b). In determining a reasonable fee, a key question

is the degree of success obtained by the plaintiff, which takes into account the relief awarded. *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1983). In this case, Barnes's degree of success and the amount of her fees is still uncertain. If she declines to accept the remittitur, the court will hold a new trial, where she will accumulate additional fees and could recover damages that are more or less than $150,000. As a result, the court will deny her motion for attorney's fees and costs without prejudice. If she accepts the remittitur, she may notify the court that she wishes to renew her request for fees and costs without further briefing, and the court will decide the motion promptly. If she rejects the remittitur, she may renew her motion after the new trial.

ORDER

IT IS ORDERED that:

1. The Wisconsin Department of Corrections' motion for a remittitur, or, in the alternative, a new trial on damages, Dkt. 135, is GRANTED. Plaintiff Verla Barnes may have until October 8, 2021, to inform the court whether she will accept a remittitur of $150,000. If Barnes doesn't respond by that date, the court will set a scheduling conference to determine a new trial date and related deadlines.

2. The parties' requests to amend the judgment to remove all equitable relief, Dkt. 131 and Dkt. 134, are GRANTED. After Barnes informs the court whether she will accept the remittitur, the court will direct the clerk of court to amend the judgment.

3. Barnes's motion for fees and costs, Dkt. 123, is DENIED without prejudice.

Entered September 23, 2021.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge